Case No. 21-10296

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MYRON MOTLEY,

*Defendant-Appellant.*

On Appeal from the United States District Court for the District of Nevada
D.C. No. 3:19-cr-00026-LRH-WGC

Hon. Larry R. Hicks, District Judge

## BRIEF OF AMICI CURIAE AMERICAN CIVIL LIBERTIES UNION AND AMERICAN CIVIL LIBERTIES UNION OF NEVADA IN SUPPORT OF DEFENDANT-APPELLANT'S PETITION FOR REHEARING EN BANC

Jennier Stisa Granick
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
425 California St., Ste. 700
San Francisco, CA 94104
(415) 343-0758
jgranick@aclu.org

*Additional counsel listed on next page*

Nathan Freed Wessler
Elizabeth Gyori
Brett Max Kaufman
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
nwessler@aclu.org

Christopher M. Peterson, Esq. (13932)
AMERICAN CIVIL LIBERTIES
 UNION OF NEVADA
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
 (702) 366-1226
peterson@aclunv.org

*Counsel for Amici Curiae*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rules 26.1 and 29(a)(4)(A) of the Federal Rules of Appellate Procedure, Amici Curiae state that they do not have a parent corporation and that no publicly held corporation owns 10% or more of their stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................v

STATEMENT OF INTEREST ................................................................1

SUMMARY OF ARGUMENT .................................................................1

ARGUMENT ..........................................................................................3

I.    This case concerns a question of exceptional importance because records held in prescription monitoring program databases reveal sensitive medical information entitled to Fourth Amendment protection.......3

    A.    The reasoning of the panel majority imperils the privacy of prescription records for numerous commonly administered medications ...........................................................................3

    B.    Patients have a reasonable expectation of privacy in the sensitive, revealing medical information contained in the Nevada PMP .............8

II.    The panel decision expanding the pervasively regulated industry exception to individual patients' prescription records contravenes the exception's purpose ........................................................................12

    A.    The origin and purpose of the pervasively regulated industry exception define extremely limited circumstances in which the government can dispense with the requirement that it obtain a warrant ...........................................................................13

    B.    The pervasively regulated industry exception does not allow warrantless investigative searches by law enforcement into individual patients' prescription records .............................................17

CONCLUSION ....................................................................................18

ADDENDUM........................................................................................20

CERTIFICATE OF SERVICE FOR ELECTRONIC FILING ...............22

CERTIFICATE OF COMPLIANCE .....................................................23

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Gant*,
  556 U.S. 332 (2009)..................................................................14, 18

*Carpenter v. United States*,
  585 U.S. 296 (2018)..................................................................passim

*City of Los Angeles v. Patel*,
  576 U.S. 409 (2015)..................................................................16

*Collins v. Virginia*,
  584 U.S. 586 (2018)..................................................................14, 18

*Colonnade Catering Corp. v. United States*,
  397 U.S. 72 (1970)....................................................................15

*Donovan v. Dewey*,
  452 U.S. 594 (1981)..................................................................12, 13

*Douglas v. Dobbs*,
  419 F.3d 1097 (10th Cir. 2005)................................................9

*Ferguson v. City of Charleston*,
  532 U.S. 67 (2001)....................................................................8, 9, 10

*Florida v. Royer*,
  460 U.S. 491 (1983)..................................................................14

*Illinois v. Gates*,
  462 U.S. 213 (1983)..................................................................4

*Kyllo v. United States*,
  533 U.S. 27 (2001)....................................................................18

*Marshall v. Barlow's, Inc.*,
  436 U.S. 307 (1978)..................................................................16

*New York v. Burger*,
  482 U.S. 691 (1987)..................................................................passim

*O'Connor v. Donaldson*,
  422 U.S. 563 (1975)..................................................................4

*Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*,
  860 F.3d 1228 (9th Cir. 2017)..................................................1, 4, 9

*Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*,
    998 F. Supp. 2d 957 (D. Or. 2014) ................................................... 1, 9

*Riley v. California*,
    573 U.S. 373 (2014) ................................................................. 14, 18

*State v. Skinner*,
    10 So. 3d 1212 (La. 2009) ................................................................ 10

*Thurman v. State*,
    861 S.W.2d 96 (Tex. App. 1993) ....................................................... 11

*United States v. Biswell*,
    406 U.S. 311 (1972) ......................................................................... 15

*United States v. Dahlman*,
    13 F.3d 1391 (10th Cir. 1993) ............................................................ 4

*United States v. Motley*,
    89 F.4th 777 (9th Cir. 2023) ...................................................... passim

*Whalen v. Roe*,
    429 U.S. 589 (1977) ........................................................................... 8

**Statutes & Regulations**

21 U.S.C. § 812 ..................................................................................... 3

Alaska Stat. § 17.30.200(d)(5) ............................................................... 6

Ariz. Rev. Stat. Ann. § 36-2604(C)(4) .................................................... 6

Cal. Code Regs. tit. 11, § 827.4(k)(3) ..................................................... 6

Mont. Code Ann. § 37-7-1506(1)(f) ........................................................ 6

Mont. Code Ann. § 46-4-301(3) ............................................................. 6

Nev. Admin. Code § 453.065 ................................................................. 5

Nev. Admin. Code § 453.076(1) ............................................................. 5

Nev. Admin. Code § 453.076(3) ............................................................. 5

Nev. Admin. Code § 639.926(1) ........................................................... 11

Nev. Rev. Stat. § 453.165(1) .................................................................. 5

Nev. Rev. Stat. § 453.165(3) .................................................................. 5

Or. Rev. Stat. § 431A.865(3)(a)(G) ......................................................... 6

**Other Authorities**

Am. Med. Ass'n, *Code of Medical Ethics Opinion 3.2.1: Confidentiality* .............11

Am. Pharmacists Ass'n, *Code of Ethics* § II ..........................................................11

Appriss Health, *PMP Aware Requestor User Support Manual: Nevada
    Prescription Monitoring Program* (Feb. 2021) ....................................................5

Bernard Friedland, *Physician-Patient Confidentiality*,
    15 J. Legal Med. 249 (1994)................................................................................11

Consumer Watchdog, *On World AIDS Day, an HIV+ Man Sues Doctor and
    Medical Group for Discrimination After Refusing to Provide Treatment*, PR
    Newswire (Dec. 1, 2020) ....................................................................................10

Dennis Romboy, *Unwarranted Drug Database Search Prompts New Utah Law,
    Lawsuits*, Desert News (Apr. 24, 2014) ...............................................................7

U.S. Drug Enf't Admin., *Controlled Substances* (Dec. 14, 2023) ...........................3

Lawrence O. Gostin, *Health Information Privacy*,
    80 Cornell L. Rev. 451 (1995) ..............................................................................8

Leo Beletsky, *Deploying Prescription Drug Monitoring to Address the Overdose
    Crisis: Ideology Meets Reality*, 15 Ind. Health L. Rev. 139 (2018) .....................8

Madaleine Rubin, *Texas Attorney General Requests Transgender Youths' Patient
    Records from Georgia Clinic*, Tex. Trib. (Jan. 26, 2024)....................................10

Marlisse Silver Sweeney, *The Big Drug Database in the Sky: One Firefighter's
    Year-Long Legal Nightmare*, ArsTechnica (May 12, 2015)..................................7

Marlisse Silver Sweeny, *"I'll Never Ask for Another Pain Pill Again":* R
    *Database Damage in Utah*, ArsTechnica (May 12, 2015)...................................7

Mollie Bryant, *Lawsuit: Brandon PD Violated HIPAA*, The Clarion-Ledger
    (Dec. 28, 2015) ....................................................................................................7

New London Consulting & FairWarning, *How Privacy Considerations Drive
    Patient Decisions and Impact Patient Care Outcomes* (Sept. 13, 2011).............11

*Physician-Patient Relationship—Physician-Patient Privilege*, 3 Modern Tort
    Law: Liability and Litigation § 24:10 (2d ed. 2023) ..........................................11

Robert Baker, *Before Bioethics: A History of American Medical Ethics from the
    Colonial Period to the Bioethics Revolution* (2013)...........................................11

## STATEMENT OF INTEREST

The American Civil Liberties Union ("ACLU") is a nationwide, non-profit, non-partisan organization dedicated to defending the civil liberties and civil rights guaranteed by the federal and state constitutions. The ACLU of Nevada is the ACLU's Nevada affiliate. The protection of privacy as guaranteed by the Fourth Amendment is of special concern to each organization. The ACLU has been at the forefront of numerous state and federal cases addressing the right of privacy, including as counsel for petitioner in *Carpenter v. United States*, 585 U.S. 296 (2018), and counsel for intervenors in *Oregon Prescription Drug Monitoring Program v. United States Drug Enforcement Administration*, 998 F. Supp. 2d 957 (D. Or. 2014), *rev'd on standing grounds*, 860 F.3d 1228 (9th Cir. 2017).

Pursuant to Federal Rule of Appellate Procedure Rule 29(a)(4)(E), amici certify that no person or entity, other than amici curiae, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part. Pursuant to Circuit Rule 29-2(a), all parties consent to the filing of this brief.

## SUMMARY OF ARGUMENT

The panel's broad reasoning—that patients have no expectation of privacy in their prescription records when their medications are regulated by the government— threatens medical privacy everywhere. Although the panel majority purported to

1

limit its holding to prescriptions for opioid pain medications, its rationale could permit unrestrained law enforcement access to prescription records for the many commonly prescribed medications designated as controlled substances. Unfettered access to those records can reveal, for example, that a patient is transgender, suffers from an anxiety disorder, or has AIDS. And the ruling fails to grapple with the Supreme Court's forceful holding in *Carpenter v. United States*, 585 U.S. 296 (2018), that people can retain a reasonable expectation of privacy in records held by a third party when those records are both highly sensitive and involuntarily conveyed, as is the case here.

The expectation of privacy in prescription records is reasonable notwithstanding that authorities are permitted to conduct administrative inspections of individual pharmacies pursuant to the pervasively regulated industry exception to the warrant requirement. Rather than inspecting particular pharmacies for regulatory compliance, law enforcement in this case accessed records held in Nevada's Prescription Monitoring Program ("PMP") database to conduct a criminal investigative search targeted at an individual patient. *See United States v. Motley*, 89 F.4th 777, 780–81 (9th Cir. 2023). This kind of straightforward criminal search is untethered from the rationales behind any exception to the warrant requirement, including the administrative regulation basis the panel majority relied on here. Because the panel's opinion conflicts with well-established Fourth Amendment law

and imperils the medical privacy of residents of this Circuit, this Court should grant

en banc review.

## ARGUMENT

I. **This case concerns a question of exceptional importance because records held in prescription monitoring program databases reveal sensitive medical information entitled to Fourth Amendment protection.**

A. **The reasoning of the panel majority imperils the privacy of prescription records for numerous commonly administered medications.**

The panel held that patients prescribed opioids do not have a reasonable

expectation of privacy in their prescription records maintained by the Nevada PMP

because "the federal government has regulated opioids under the [Controlled

Substances Act ('CSA')]" "for over half a century," and Nevada has done the same

for almost thirty years. *Motley*, 89 F.4th at 785. Although the panel sought to cabin

its holding solely to opioids, *see id*. at 786 n.12, the decision's logic threatens to

bless unfettered law enforcement access to prescription records for *any* controlled

substance. Hundreds of commonly prescribed medications are regulated by the

federal CSA and Nevada's state law counterpart. *See* 21 U.S.C. § 812; Nev. Rev.

Stat. Ann. § 453.162; Nev. Admin. Code §§ 453.520–453.550; U.S. Drug Enf't

Admin., *Controlled Substances* (Dec. 14, 2023), https://www.deadiversion.

usdoj.gov/schedules/orangebook/c_cs_alpha.pdf. These include medicines used to

treat mental health diagnoses (Xanax and Adderall), side effects of cancer treatment

and AIDS (Marinol), substance use disorder (Suboxone), and insomnia (Ambien), and to provide gender-affirming care (testosterone).[1] If the level of government regulation is a decisive factor for determining when prescription records are protected by the Fourth Amendment, *see Motley*, 89 F.4th at 785–86, then patients prescribed *any* drug regulated by the CSA or its Nevada analog could be deemed to have no expectation of privacy in their prescription records. *Id.* at 790–91 (Graber, J., concurring in part and concurring in the judgment).[2]

---

[1] *See* Addendum, *post*.

[2] In concurrence, Judge Graber expressed concerns about the "extremely revealing" nature of prescription records as well as the breadth and "correctness" of the panel's ruling. *See Motley*, 89 F.4th at 790–91. Amici share those concerns. However, amici disagree with Judge Graber's assertion that the panel majority should have decided the case on the basis of the good-faith exception to the exclusionary rule, without addressing the underlying Fourth Amendment question. *See id.* at 788, 791.

    When a case presents a "novel question of law whose resolution is necessary to guide future action by law enforcement officers and magistrates, there is sufficient reason for the Court to decide the violation issue *before* turning to the good-faith question." *Illinois v. Gates*, 462 U.S. 213, 264, 265 n.18 (1983) (White, J., concurring) (citing *O'Connor v. Donaldson*, 422 U.S. 563 (1975)); *see also United States v. Dahlman*, 13 F.3d 1391, 1397 (10th Cir. 1993) ("[T]he preferred sequence is to address the Fourth Amendment issues before turning to the good faith issue unless there is no danger of 'freezing' Fourth Amendment jurisprudence or unless the case poses 'no important Fourth Amendment questions.'" (citation omitted)). In light of "the particularly private nature of the medical information at issue," *Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*, 860 F.3d 1228, 1235 (9th Cir. 2017), and the need to clarify the role of the Fourth Amendment in protecting it, the panel majority was correct not to rest solely on the good-faith exception in resolving this case.

The practical impact of the panel's reasoning will be particularly damaging in Nevada and other states that permit law enforcement officers to log into the PMP and download individuals' prescription records. *See* Nev. Rev. Stat. §§ 453.165(1), (3); Nev. Admin. Code § 453.065 (providing law enforcement agents direct "Internet access to the database"). In Nevada, when an officer searches for a particular patient's records in the PMP, they see a list of *every* controlled substance that has been prescribed and dispensed to that individual, not just opioids.[3] Thus, even if law enforcement agents purport to be investigating opioid use, they would also see prescription information revealing, for example, that the patient is transgender, suffers from an anxiety disorder, or is in successful ongoing treatment for substance use disorder. Consequently, the panel majority's insistence that its rationale applies only to opioids will provide cold comfort to the many individuals who are receiving treatment for serious and sensitive conditions requiring prescription medications designated as controlled substances. And should any state in this Circuit expand its PMP to cover prescription medications beyond controlled substances (encompassing

---

[3] *See* Appriss Health, *PMP Aware Requestor User Support Manual: Nevada Prescription Monitoring Program* 19–21, 59 (Feb. 2021), https://perma.cc/8NJA-MT5P; *see also* Nev. Admin. Code § 453.076(1) (adopting Requestor User Support Manual, *supra*, into the Nevada Administrative Code by reference); *id*. § 453.076(3) (establishing relevance of Support Manual to law enforcement requests).

everything from amoxicillin to Viagra), as at least one state has done, the panel's rule would wreak even greater havoc.[4]

Imposing a warrant requirement for criminal searches of patients' records in PMP databases would avoid this problem. After particularly describing the records sought and demonstrating probable cause, police would serve the warrant on the PMP administrator, who would query the patient's prescription history and produce only those records within the scope of the warrant. This process is well familiar to police. Even when it comes to PMP databases, this is established practice in many jurisdictions. In this Circuit, statutes and regulations in Alaska, Arizona, California, Montana, and Oregon already require law enforcement to obtain a warrant or other legal process pursuant to a showing of probable cause to request a patient's records from the state PMP database. Alaska Stat. § 17.30.200(d)(5); Ariz. Rev. Stat. Ann. § 36-2604(C)(4); Cal. Code Regs. tit. 11, § 827.4(k)(3); Mont. Code Ann. § 37-7-1506(1)(f); *id.* § 46-4-301(3); Or. Rev. Stat. § 431A.865(3)(a)(G). Those states' requirements reflect the private nature of prescription drug queries. The Fourth Amendment requires as much in Nevada (and other states) too.

On the other hand, allowing warrantless searches of prescription records held in the PMP database will lead to disastrous consequences for people in this Circuit.

---

[4] *See* Bernie Monegain, *Nebraska Becomes First State to Require All Drugs Be Reported to Prescription Monitoring Program*, Healthcare IT News (Jan. 13, 2018), https://perma.cc/KUF2-36RJ.

The experience of residents of other states is instructive. In Utah, for example, two firefighters with prescriptions for opiate-based painkillers due to legitimate medical diagnoses were wrongly charged with prescription drug fraud after a police officer downloaded their prescription histories from Utah's PMP while investigating morphine theft from ambulances at area fire stations.[5] The officer lacked medical training, but nonetheless concluded that the firefighters' prescription histories were suspicious. Charges were eventually dropped months later, but not before the firefighters were placed on administrative leave and suffered incredible stress and anxiety. The ordeal even nearly derailed one firefighter's adoption of two young children.[6] In another Utah case, a police officer with direct log-in access to the PMP database accessed the prescription records of a couple with criminal histories and then reportedly used this knowledge to steal their medications from them while pretending to conduct home visits to ensure that no drugs were being misused.[7] As these and other cases illustrate,[8] a warrant requirement protects against fishing

---

[5] Marlisse Silver Sweeney, *The Big Drug Database in the Sky: One Firefighter's Year-Long Legal Nightmare*, ArsTechnica (May 12, 2015), https://perma.cc/SRE5-RSEJ; Dennis Romboy, *Unwarranted Drug Database Search Prompts New Utah Law, Lawsuits*, Desert News (Apr. 24, 2014), https://perma.cc/7WV8-BK7W.

[6] Sweeney, *supra* note 5.

[7] Marlisse Silver Sweeny, *"I'll Never Ask for Another Pain Pill Again": ℞ Database Damage in Utah*, ArsTechnica (May 12, 2015), https://perma.cc/XH3V-WXQC.

[8] *See, e.g.*, Mollie Bryant, *Lawsuit: Brandon PD Violated HIPAA*, The Clarion-Ledger (Dec. 28, 2015), https://perma.cc/CV44-8M49.

expeditions that can subject people to unjustified investigations, wrongful arrests, and other harms.

Requiring a warrant also ensures the effective functioning of the health system. Patients are less likely to divulge sensitive information to health professionals if they are not assured that their confidences will be protected. *See* Lawrence O. Gostin, *Health Information Privacy*, 80 Cornell L. Rev. 451, 490–91 (1995). When law enforcement can easily access medical and prescription records, patients may not receive adequate diagnosis and treatment of important health conditions or may forgo critical medical care altogether. *Ferguson v. City of Charleston*, 532 U.S. 67, 78 n.14 (2001) (citing *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977)) (warrantless law enforcement access to patients' medical information "may have adverse consequences because it may deter patients from receiving needed medical care"); Leo Beletsky, *Deploying Prescription Drug Monitoring to Address the Overdose Crisis: Ideology Meets Reality*, 15 Ind. Health L. Rev. 139, 142 (2018). By endangering people's privacy in their medical records, the panel majority's ruling threatens to cause real harms.

**B.      Patients have a reasonable expectation of privacy in the sensitive, revealing medical information contained in the Nevada PMP.**

Not only does the panel's ruling green-light potentially devastating practical consequences for public health and privacy—it is also in tension with Supreme Court precedent. As the Supreme Court explained in *Carpenter*, when law enforcement

seeks records from a third party in which the subject of the investigation has a reasonable expectation of privacy, a warrant is required. 585 U.S. at 317–19; *see also Ferguson*, 532 U.S. at 78, 85–86 (warrant required for drug test results held by a hospital). *Carpenter* instructs that evaluating whether there is a reasonable expectation of privacy in such records requires a dual inquiry into "the nature of the particular documents sought" and whether they were "voluntar[ily] expos[ed]." 585 U.S. at 314–15. Here, both considerations weigh in favor of Fourth Amendment protection.

As Petitioner explains, Pet. for Reh'g 16–18, prescription records—like other medical records—are documents of a highly sensitive and private nature. Drugs listed as controlled substances and tracked by the PMP include frequently prescribed medications used to treat a wide range of serious medical conditions, including mental health disabilities, addiction, gender dysphoria, and symptoms associated with AIDS and cancer treatment. *See Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*, 998 F. Supp. 2d 957, 960 (D. Or. 2014), *rev'd on standing grounds*, 860 F.3d 1228 (9th Cir. 2017).[9] Like all prescription histories, PMP records can reveal patients' diagnoses, their physicians' confidential medical advice, their chosen course of treatment, and even the stage or severity of their disorder or disease. *See Douglas v. Dobbs*, 419 F.3d 1097, 1102 (10th Cir. 2005) ("Information contained

---

[9] *See also* Addendum, *post*.

in prescription records . . . may reveal other facts about what illnesses a person has[.]"). Disclosure of such information can cause exceptional harm, such as discrimination.[10]

Given the sensitive nature of these records, courts have held that patients have a reasonable expectation of privacy in their medical—including prescription—records, even when such records are in the custody of third parties. *See, e.g.*, *Ferguson*, 532 U.S. at 78 ("The reasonable expectation of privacy enjoyed by the typical patient undergoing diagnostic tests in a hospital is that the results of those tests will not be shared with nonmedical personnel without her consent."); *State v. Skinner*, 10 So. 3d 1212, 1218 (La. 2009) ("[W]e find that the right to privacy in one's medical and prescription records is an expectation of privacy that society is prepared to recognize as reasonable."). Similarly, physicians, health professionals, and pharmacists have long been required to preserve the confidentiality of patient health information, from the original Oath of Hippocrates to the earliest codes of ethics of American medical societies to state-law recognition of the physician-

---

[10] *See, e.g.*, Madaleine Rubin, *Texas Attorney General Requests Transgender Youths' Patient Records from Georgia Clinic*, Tex. Trib. (Jan. 26, 2024), https://perma.cc/H9YP-85JT; Consumer Watchdog, *On World AIDS Day, an HIV+ Man Sues Doctor and Medical Group for Discrimination After Refusing to Provide Treatment*, PR Newswire (Dec. 1, 2020), https://perma.cc/E4L4-V3WG.

patient privilege.[11] Virtually all patients (97.2%) believe that health care providers have a "legal and ethical responsibility to protect patients' medical records."[12]

Additionally, the fact that patients' prescription records are held by a third party does not undermine patients' privacy interests because the records are not voluntarily conveyed. *See Carpenter*, 585 U.S. at 315. The decision to visit a physician and pharmacist to obtain medical treatment is not in any meaningful sense voluntary because the need for care is dictated by one's physical and psychological ailments. *See Thurman v. State*, 861 S.W.2d 96, 98 (Tex. App. 1993) ("A decision to use a bank may be voluntary. A decision to use a hospital for emergency care is not.") (citation omitted). Opting to forgo care can leave a person debilitated or worse. And once a person has had a prescription for a schedule II–V drug filled, Nevada law requires the disclosure of extensive information to the PMP database. *See* Nev. Admin. Code § 639.926(1). Thus, apart from forgoing care, "there is no way to avoid

---

[11] *See* Bernard Friedland, *Physician-Patient Confidentiality*, 15 J. Legal Med. 249, 256 (1994); *see also* Robert Baker, *Before Bioethics: A History of American Medical Ethics from the Colonial Period to the Bioethics Revolution* (2013); Am. Med. Ass'n, *Code of Medical Ethics Opinion 3.2.1: Confidentiality*, https://www.ama-assn.org/delivering-care/ethics/confidentiality; Am. Pharmacists Ass'n, *Code of Ethics* § II, https://www.pharmacist.com/code-ethics; *Physician-Patient Relationship—Physician-Patient Privilege*, 3 Modern Tort Law: Liability and Litigation § 24:10 (2d ed. 2023).

[12] New London Consulting & FairWarning, *How Privacy Considerations Drive Patient Decisions and Impact Patient Care Outcomes* 10 (Sept. 13, 2011), https://perma.cc/4UDT-A5MT.

leaving behind a trail of [medical] data." *Carpenter*, 585 U.S. at 315. "As a result, in no meaningful sense does the [patient] voluntarily 'assume[ ] the risk' of turning over" this information. *Id.* (second alteration in original). Patients have a reasonable expectation of privacy in their prescription records, and the Fourth Amendment's warrant requirement applies.

II.     **The panel decision expanding the pervasively regulated industry exception to individual patients' prescription records contravenes the exception's purpose.**

In the limited instances in which the Supreme Court has applied the pervasively regulated industry exception, it has been to subject the *owners* of businesses to inspection of their business records, products, or premises. The Court has never applied or condoned using the exception to justify warrantless searches of a business' customers or employees for the purpose of investigating or prosecuting them for crimes. *See, e.g.*, *New York v. Burger*, 482 U.S. 691, 711 (1987) (applying the exception to "the operator of a vehicle dismantling business" for inspection of their business records and vehicles or parts on the business premises); *Donovan v. Dewey*, 452 U.S. 594, 603–04 (1981) (applying the exception to mine inspections because, *inter alia*, "the owner of such a facility cannot help but be aware that he 'will be subject to effective inspection'"). This is because, unlike customers or employees, "the owner or operator of commercial premises in a 'closely regulated' industry has a reduced expectation of privacy" due to their advanced knowledge

about the government's regulatory role and choice to enter the industry anyway. *Burger*, 482 U.S. at 702; *see also Donovan*, 452 U.S. at 598–99.

Whatever the pervasively regulated industry doctrine might say about administrative inspections of pharmacies' books, state law enforcement here did not inspect the pharmacy records for the purpose of ensuring pharmacies' legal or regulatory compliance. Rather, the purpose was seeking evidence to prosecute an individual for drug crimes. *See Motley*, 89 F.4th at 780–81. While pharmacy owners know their businesses may be inspected for health and safety enforcement and choose to enter the industry regardless, patients receiving controlled substance prescriptions, often for serious medical conditions, have no alternative. When law enforcement searches PMP records for the purpose of individual criminal prosecution of patients, a warrant is required.[13]

A.   **The origin and purpose of the pervasively regulated industry exception define extremely limited circumstances in which the government can dispense with the requirement that it obtain a warrant.**

The panel majority concluded that because opioid prescribing by physicians and pharmacists is subject to "pervasive regulation," people have no reasonable

---

[13] The warrantless search in this case is additionally unreasonable because Nevada's statutory scheme governing law enforcement access to the PMP does not limit law enforcement discretion, as Appellant explains. *See Burger*, 482 U.S. at 703; Pet. for Reh'g at 13–15.

expectation of privacy in records of their prescriptions for such medication—even in the context of targeted investigations by law enforcement. *Motley*, 89 F.4th at 786 & n.12. This is incorrect. Even assuming the pervasively regulated industry exception permits regulatory inspections of pharmacists' books, it does not permit warrantless searches of individual *patients'* records merely because a pharmacist once touched them. That reasoning stretches the pervasively regulated industry exception to the Fourth Amendment's warrant requirement beyond the bounds of regulation into the realm of criminal investigations, which have always required a warrant.

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citation omitted). A critical corollary of this rule is that searches carried out pursuant to an exception to the warrant requirement "must be limited in scope to that which is justified by the particular purposes served by the exception." *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion). In other words, any application of a recognized exception must remain "[]tether[ed] . . . [to] the justifications underlying it." *Collins v. Virginia*, 584 U.S. 586, 595 (2018) (quoting *Riley v. California*, 573 U.S. 373, 386 (2014) (internal quotation marks omitted)); *see also Gant*, 556 U.S. at 343.

The "pervasively regulated industry" exception, sometimes known as the "closely regulated industry" exception, was first recognized by the Supreme Court in the context of warrantless inspections of "two enterprises that had 'a long tradition of close government supervision,'" namely, the liquor and firearm industries. *Burger*, 482 U.S. at 700 (citing *Colonnade Catering Corp. v. United States*, 397 U.S. 72 (1970) (liquor) and *United States v. Biswell*, 406 U.S. 311 (1972) (firearm)). The Court explained that effective regulation of those industries required "unannounced, even frequent, inspections" with "flexibility as to time, scope, and frequency" and for which "the prerequisite of a warrant could easily frustrate inspection." *Biswell*, 406 U.S. at 316. An exception to the warrant requirement was reasonable in large part because the proprietors "choose[] to engage in this pervasively regulated business" knowing their industry is subject to "effective inspection." *Id*.; *see also Colonnade Catering Corp.*, 397 U.S. at 77.

In order for a warrantless inspection to be reasonable under the exception, the Supreme Court has explained that the entity to be searched must itself be pervasively regulated, and there must be (1) "a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made;" (2) "the warrantless inspections must be 'necessary to further [the] regulatory scheme;'" and (3) "the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the

law and has a properly defined scope, and it must limit the discretion of the inspecting officers." *Burger*, 482 U.S. at 702, 703 (citations omitted).

The Supreme Court has repeatedly declined to dispense with the warrant requirement in situations where doing so does not further the inspection scheme, unduly invades privacy, or where inspectors can readily obtain a warrant. In *Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978), for example, the Court declined to apply the exception to permit warrantless inspections of all businesses engaged in inter-state commerce because requiring warrants was necessary to protect employers' privacy and would not burden, prevent, or make less effective the inspection scheme, especially because warrants can be obtained *ex parte* and employees can report unlawful conditions. *See id*. at 315–20, 322. More recently, the Court in *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), declined to expand the exception to hotel guest registries. Even though hotels must obtain government licenses to operate and meet a plethora of financial, consumer protection, and sanitary requirements, the Court held that these regulations did not justify dispensing with the warrant requirement under the exception, noting that hotel registries contain guests' sensitive information, warrantless inspections are not "necessary" to further the regulatory scheme, and the inspection program at issue did not provide a constitutionally adequate substitute for a warrant. *Id*. at 426.

The Court has consistently rejected efforts to expand the exception beyond its narrow justification of furthering administrative inspections of a highly regulated industry.

**B.**  **The pervasively regulated industry exception does not allow warrantless investigative searches by law enforcement into individual patients' prescription records.**

The panel's reliance on the pervasively regulated industry exception to conclude that patients have no reasonable expectation of privacy in their prescription records dangerously expands the exception from allowing regularized inspection of highly regulated businesses to permitting unbounded searches of individuals' personal records necessarily held by another party for vital services. *See Motley*, 89 F.4th at 784–86. Doing so fails to comport with the purpose, reasoning, and carefully delineated limits of the exception. Although warrantless searches can be permissible when there is a need for random and surprise inspections in order to avoid potential disappearance of evidence during the delay required to obtain a warrant, *see Burger*, 482 U.S. at 710, there is no such risk of disappearance or alteration of evidence with respect to PMP records, as they are held securely in a state database out of reach of any meddling hands. Warrantless access is simply not necessary to further the government's investigative interests.

Nor does the ability of authorities to conduct administrative inspections of individual pharmacies or other drug dispensaries to check for regulatory compliance

reduce the expectation of privacy in sensitive prescription records in the PMP, particularly as against a criminal investigative search of an individual patient's records. The existence of an exception to the warrant requirement as to certain records to accomplish inspections of closely regulated businesses does not justify warrantless searches of those records when obtained another way or for another reason. As the Supreme Court has put it, "[t]he fact that equivalent information could sometimes be obtained by other means does not make lawful the use of means that violate the Fourth Amendment." *Kyllo v. United States*, 533 U.S. 27, 35 n.2 (2001). Similarly, courts should not mechanically apply exceptions to the warrant requirement when the justification for the exception is inapplicable. *See, e.g.*, *Riley*, 573 U.S. 373 (declining to extend search-incident-to-arrest exception); *Gant*, 556 U.S. 332 (same); *Collins*, 584 U.S. 586 (declining to extend automobile exception).

## CONCLUSION

For the reasons above, the Court should grant the petition for rehearing en banc.

Date: April 5, 2024

/s/ Nathan Freed Wessler
Nathan Freed Wessler
Elizabeth Gyori
Brett Max Kaufman
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
nwessler@aclu.org

Jennier Stisa Granick
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
425 California St., Ste. 700
San Francisco, CA 94104
(415) 343-0758
jgranick@aclu.org

Christopher M. Peterson, Esq.
AMERICAN CIVIL LIBERTIES
  UNION OF NEVADA
4362 W. Cheyenne Ave.
North Las Vegas, NV 89032
(702) 366-1226
peterson@aclunv.org

*Counsel for Amici Curiae*

**Table of Selected Medical Conditions Treated by Schedule II–V Medications[14]**

| Medical Condition | Schedule II–V Medications Approved for Treatment of Condition |
| --- | --- |
| Hormone replacement therapy for treatment of gender identity disorder/gender dysphoria | Testosterone |
| Weight loss associated with AIDS | Marinol (dronabinol), Cesamet (nabilone |
| Nausea & vomiting in cancer patients undergoing chemotherapy | Marinol (dronabinol), Cesamet (nabilone) |
| Trauma- and stressor-related disorders, including acute stress disorder and post-traumatic stress disorder (PTSD) | Xanax, Valium, Ativan, Lexotan, Librium, Traxene, Sepazon, Serax, Centrax, nordiazepam |
| Anxiety disorders and other disorders with symptoms of panic | Xanax, Valium, Ativan, Lexotan, Librium, Traxene, Sepazon, Serax, Centrax, nordiazepam |
| Alcohol addiction withdrawal symptoms | Serax/Serenid-D, Librium (chlordiazepoxide) |
| Opiate addiction treatment | Buprenorphine (Suboxone), methadone |
| Attention deficit hyperactivity disorder | Ritalin, Adderall, Vyvanse |
| Obesity (weight loss drugs) | Didrex, Voranil, Tenuate, mazindol |
| Chronic or acute pain | Narcotic painkillers, such as codeine (including Tylenol with codeine), hydrocodone, Demerol, morphine, Vicodin, oxycodone (including Oxycontin and Percocet) |
| Epilepsy and seizure disorders | Nembutal (pentobarbital), Seconal (secobarbital), clobazam, clonazepam, Versed, Fycompa (perampanel) |

---

[14] Descriptions of listed medications, including their approved uses, are available through the Physicians' Desk Reference website, www.pdr.net.

| | |
|---|---|
| Testosterone deficiency in men | Maxibolin, Orabolin, Durabolin, Duraboral (ethylestrenol) |
| Delayed puberty in boys | Anadroid-F, Halotestin, Ora-Testryl |
| Narcolepsy | Xyrem, Provigil |
| Insomnia | Ambien, Lunesta, Sonata, Restoril, Halcion, Doral, Ativan, ProSom, Versed, Belsomra |
| Migraines | Butorphanol (Stadol) |

**CERTIFICATE OF SERVICE FOR ELECTRONIC FILING**

I hereby certify that on April 5, 2024, I electronically filed the foregoing Amici Curiae Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, which effects service upon all counsel of record.

Dated: April 5, 2024

Respectfully submitted,

*/s/ Nathan Freed Wessler*
Nathan Freed Wessler

*Counsel for Amici Curiae*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief contains 4,200 words, excluding the items exempted by Fed. R. App. P. 32(f), and complies with the length specifications set forth by Circuit Rule 29-2(c)(2). I further certify that this brief was prepared using 14-point Times New Roman font, in compliance with Fed. R. App. P. 32(a)(5) and (6).

Dated: April 5, 2024

Respectfully submitted,

*/s/ Nathan Freed Wessler*
Nathan Freed Wessler

*Counsel for Amici Curiae*